*59 The opinion of the Court was delivered by
Harper, J.
The only point argued on the appeal respected the liability of the defendant, Mrs. Spearman, for the acts of her husband, during the coverture, in wasting the property of their wards. It is certain that her guardianship bond, signed by her, together with her husband and the sureties, as was observed by Lord Redesdale, in the case of Adair vs. Shaw, 1 Sch. and Lef., 284, with respect to an administration bond of a feme covert, was nothing. It was void at law, and a Court of Equity would charge her no farther than she would be chargeable on its own principles without it. I have- found no authority directly applicable to the subject. It is settled, that if a feme executrix, or administratrix, marry, she is liable for any devastavit the husband may afterwards commit; it is said, because it was her folly to take a husband who would so misconduct himself. So, I suppose, it would be, upon like reason, if a woman, being guardian, should marry, and thus put into the husband’s hands power to waste the ward’s estate. In the case of Beynon vs. Gollins, as reported 2 Bro. Ch. Rep., 323, it was held, that where administration had been granted to the wife during the marriage, she was not liable for the devas-tavit of the husband, afteir his death.- Lord Thurlow lays it down, that the action for devastavit would not lie at law, where the executorship was taken in the name of the wife, during the coverture, if she renounced upon her husband’s death. In the. case of Adair vs. Shaw, before referred to, however, Lord Redesdale declares the case of Beynon vs. Gollins to have been wrongly reported, and that the point represented to have been-decided in Brown did not arise in the case. In that case, administration was taken out in the name of the wife, during the coverture. The principal question in the case was, whether the representatives of the husband were liable in equity for his devastavit, no action having been brought against him in his life time, and being gone at law upon his death. Another question was, whether the wife was liable for the husband’s devastavit, and she was held to be so liable to creditors, inas *60 much as the action at law remained against her, in favour of creditors. The Chancellor intimates an opinion that she would be liable also to legatees, but determined nothing on that point; the claim not being pressed. The capacity of the wife to take administration, apart from her husband, seems to have been borrowed by the ecclesiastical Courts from the civil, contrary to the general rule of the common law, which merges the separate existence of the wife in that of the husband. I have met with no decision respecting the wife’s liability, in the case of a joint administration of herself and her husband; but in such case it may be supposed that she would be liable, at least to creditors, as the action at law would survive against her. The rules respecting guardians, however, are -not taken from the ecclesiastical Courts. I am not aware how the ward could have any proceeding at law, against the wife surviving in spch case, for the waste of the husband during the coverture. She was not capable of committing waste, or rendering herself responsible to an action. The bond, as I before observed, is a nullity, so far as she is concerned. Equity does, for some purposes, regard the wife as a separate person, and guardianship has been committed to the wife alone. But in such case the Court will restrain the husband from interfering, and will protect the wife in disposing of the person and the property of the ward; It will order money to be paid her on her own separate receipt. Wallis vs. Campbell, 13 Ves., 616. In such case Equity would charge her for her own waste. But in the case of a joint appointment with her husband, she can exercise no power of disposition. Here her, separate existence must be merged in the husband. I can conceive of no purpose or effect of such an appointment but to give the guardianship to the husband during the marriage, and to the wife if she shall survive him. And so I think the undertaking of the sureties must be regarded. They undertake for the conduct of the husband during his life, and for that of the wife if she shall survive. Apart from the hardship which seems to be imposed on the sureties in the present case, it would be plainly inequitable, on general principles, *61 to make the wife hable for mismanagement to which she did not contribute, and could not have controlled. It may be said that it was her folly to join her husband in applying for the appointment. But the presumption oí the law will be found fact in many instances, that she acted under the influence and control of her husband.
It was argued that Mrs. Spearman was appointed testamentary guardian of her children, by the will of her former husband, and that the rule applies to her which would apply to a feme executrix or administratrix marrying. This fact is mentioned by the defendant in her answer, and is made no part of the complainant’s case. It does not appear from the decree that the point was made to the Court below. It does not appear that she ever acted under the appointment of the will. I give no opinion as to what her liability would have been, if she hkd assumed and acted under the appointment of the will which she put it into his power to do by marrying. ' The appointment w,as made by the Court, without reference to the will, which, it appears by the decree, was not brought to the view of the Court. The guardianship has since been revoked, and the estate put out of the defendant’s power. For these reasons, we must regard it as an original appointment by the Court, and leave out of question the appointment of the will. The decree must, therefore, be affirmed, and the motion dismissed.
Johnson and O’Neall, JJ., concurred.

Appeal dismissed.